UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FUAD NASER KHOURY,
Petitioner,
v.
KRISTI NOEM, et al.,
Respondents.

Case No. 5:26-cv-00113-SRM-MBK

**ORDER GRANTING, IN PART, APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [2]**

## I. INTRODUCTION

Before the Court is Petitioner Fuad Naser Khoury's ("Petitioner") Application for Temporary Restraining Order and Preliminary Injunction ("Application"). *See* Dkt. 2. Respondents Kristi Noem, Pamela J. Bondi, Thomas Giles, James Pilkington, and Warden ("Respondents") oppose the Application ("Opposition"). *See* Dkt. 12. Petitioner replied to the Opposition ("Reply"). *See* Dkt. 13.

The Court has reviewed the parties' arguments, relevant legal authority, and record in this case. The Application is **GRANTED, IN PART**.

## II. BACKGROUND

The following facts are derived from the verified allegations in the Petition for a Writ of Habeas Corpus by a Person in Federal Custody Under 28 U.S.C. § 2241

(“Petition”). *See* Dkt. 1. Petitioner is a Jordanian national born in Bethlehem, Palestine in 1970. *Id.* at 5.[1] He was admitted to the United States in 1978 and later obtained legal permanent resident status. *Id.* On January 11, 2006, an immigration judge ordered Petitioner removed from the United States to Jordan. *Id.*; *see also* Dkt. 12-1 at 2. From February 24, 2015, through September 2, 2015, Petitioner was held in Immigration and Customs Enforcement’s (“ICE”) detention pending removal. *Id.* On September 2, 2015, he was released on supervision. *Id.* Over the next 11 years, Petitioner complied with the conditions of his release. *Id.*

On July 30, 2025, Petitioner reported for a routine yearly check-in at ICE’s San Bernardino field office. *Id.* An unidentified ICE officer informed Petitioner he was being re-detained “due to the new administration.” *Id.* at 5–6. Petitioner attests that ICE did not provide him with a written notice of revocation or an informal interview to contest the reasons for the revocation. *Id.* at 6.

On January 9, 2026, Petitioner filed this Petition asserting four claims against Respondents. *See id.* at 8–15. The first claim asserts that his ongoing detention is unlawful because there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 8–10. The second claim asserts that Respondents violated his Fifth Amendment right to procedural due process and the Immigration and Nationality Act’s (“INA”) implementing regulations because they failed to give him notice of the reasons for revoking his release and an informal interview to respond to those reasons. *Id.* at 11–13. The third claim asserts that Respondents’ anticipated decision to remove him to an alternative country violates his Fifth Amendment procedural due process rights. *Id.* at 13–15. The fourth claim asserts that Respondents’ current third-country removal process is punitive and unconstitutional. *Id.* at 14–15.

On the same date, Petitioner filed this Application requesting that Respondents immediately release him from immigration custody; refrain from removing him or taking

---

[1] Page citations refer to CM/ECF pagination.

him from the Central District of California; reinstate his prior order of supervision; refrain from re-detaining Petitioner until they have obtained valid travel documents necessary for his removal; refrain from re-detaining him until they follow the procedural safeguards established in 8 C.F.R. §§ 241.4 and 241.13; refrain from removing him to a country other than Jordan without following the procedures outlined in 8 U.S.C. § 1231(b)(2); and to show cause why a preliminary injunction should not be granted. Dkt. 2 at 4. On January 14, 2026, Respondents filed their Opposition. *See* Dkt. 12. Petitioner filed a Reply. *See* Dkt. 13.

This matter is now fully briefed and ready for decision.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs temporary restraining orders. A temporary restraining order is an extraordinary remedy meant to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

The standard for issuing a TRO and preliminary injunction is the same. *See Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1012 (C.D. Cal. 2020) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). To obtain a TRO, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a TRO is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a TRO under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant

may obtain a TRO if he can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, (4) and the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Given the exigent nature of a TRO, a movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt*, 734 F.2d at 1394 ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a TRO. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements);

*Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## IV. DISCUSSION

Petitioner asserts four claims against Respondents. *See* Dkt. 1 at 8–16. The first claim asserts that his ongoing detention is unlawful because there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 8–10. The second claim asserts that Respondents violated his Fifth Amendment right to procedural due process and the INA's implementing regulations because they failed to give him notice of the reasons for revoking his release and an informal interview to respond to those reasons. *Id.* at 11–13. The third claim asserts that Respondents anticipated decision to remove him to an alternative country violates his Fifth Amendment Procedural due process rights. *Id.* at 13–15. The fourth claim asserts that Respondents' current third-country removal process is punitive and unconstitutional. *Id.* at 14–15.

### A. Likelihood of Success on the Merits

#### 1. Claim 2: Violation of Revocation Procedures

Petitioner's second claim asserts that he should be released immediately from immigration custody because Respondents violated his procedural due process rights by failing to follow the revocation procedures established by the INA's implementing regulations—namely, 8 C.F.R. §§ 241.4(l) and 241.13(i). Dkt. 1 at 11–13.

To revoke a noncitizen's order of supervised release, ICE must comply with certain procedures. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). "*Upon revocation*," ICE must notify the noncitizen of the reasons for revoking his release. *Id.* (Emphasis added). Once the noncitizen is returned to ICE custody, ICE must "conduct an initial informal interview *promptly*" to afford the noncitizen an opportunity to respond to the reasons for his revocation. *Id.* (Emphasis added).

ICE, like any federal agency, has a duty to follow its own regulations. *See United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010). Because these regulations were promulgated to protect fundamental due process rights afforded to released noncitizens who have been ordered removed, ICE's failure to follow such regulations violates due process, even in the absence of prejudice to the noncitizen. *See United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014) (explaining that a regulation that protects fundamental due process rights "implicates due process concerns even without a prejudice inquiry"); *see also Delkash v. Noem*, No. 5:25-cv-01675, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (concluding petitioner was likely to succeed on procedural due process claim where evidence showed the government failed to comply with due process requirements of Section 241.13(i)(3)); *Hoac v. Becerra*, No. 2:25-cv-01740, 2025 WL 1993771, at *3–4 (E.D. Cal. July 16, 2025) (concluding petitioner showed a likelihood of success on procedural due process claim where evidence showed ICE did not provide noncitizen with an initial interview).

Petitioner argues he is likely to succeed on the merits of this claim because Respondents did not notify him of the reasons for his revocation nor provide a prompt informal interview to respond to those reasons as is required. Dkt. 2 at 2. Respondents do not respond to this argument in their Opposition. *See* Dkt. 12.

The Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim. *See Singh v. Chiang*, No. ED CV 25-3024, 2025 WL 4058328 at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument.").

Moreover, the record supports the conclusion that ICE did not comply with the revocation procedures required under Sections 241.4(l) or 241.13(i). First, according to Petitioner's verified allegations, an ICE officer told him that he was being re-detained "due to the new administration" and offered no other reason for revoking his release. Dkt. 1 at 5–6. However, release may be revoked only for certain enumerated grounds under 8

C.F.R. § 241.4(l)(1)–(2) and 8 C.F.R. § 241.13(i)(1)–(2), none of which were cited by ICE as the basis for revoking his release.

In addition, Respondents failed to submit any evidence to show they have complied with revocation procedures under 8 C.F.R. §§ 241.4(l) and 241.13(i). To the contrary, Respondent provides a declaration, signed under penalty of perjury, from ICE Deportation Officer Lourdes Palacios ("Palacios") wherein she states the following: On July 30, 2025, ERO revoked the Petitioner's OSUP and took him back into custody for the purpose of removal order under section 241 of the Immigration and Nationality Act. He was transported to the Adelanto Ice Processing Center in Adelanto, CA where he remains in custody. Dkt. 12-1 at 4. Palacios does not state that Petitioner was ever provided with notice or an informal interview in connection with the revocation of his supervised release order. *See* Dkt. 12-1.

Petitioner has thus shown he is likely to succeed on the merits of this claim.

2. Claim 1: No Significant Likelihood That Removal is Not Reasonably Foreseeable

Petitioner's first claim asserts that his ongoing detention is unlawful because there is no significant likelihood of removal in the reasonably foreseeable future. Dkt. 1 at 8–10.

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These protections extend to all persons physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This includes noncitizens and those whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections before they are detained or removed.

*See, e.g.*, *A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

The INA details the procedures for removing a noncitizen from the United States. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). When a noncitizen has been ordered removed, ICE must remove him from the United States within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the removal period. 8 U.S.C. § 1231(a)(2)(A); *see also* 8 C.F.R. § 241.3(a) ("Once the removal period defined in section 241(a)(1) of the Act begins, an alien in the United States will be taken into custody pursuant to the warrant of removal."). If the noncitizen is not removed within 90 days, he must be released subject to supervision governed by 8 C.F.R. §§ 241.4 or 241.13. *See* 8 U.S.C. § 1231(a)(3).

It is not always possible, however, to effectuate removal within the first 90 days. *Zadvydas*, 533 U.S. 678, 701 (2001). Recognizing this practical reality, certain classes of noncitizens may be detained beyond the initial 90 days for a period reasonably necessary to secure the noncitizen's removal. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, the Supreme Court explained that 8 U.S.C. § 1231(a)(6) does not permit indefinite detention. 533 U.S. at 699. But the Supreme Court did hold that, under 8 U.S.C. § 1231(a)(6), a noncitizen may be detained for a presumptively reasonable six-month period to effectuate removal. *Id.* at 701. The Supreme Court further explained that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* The government may continue to detain a noncitizen, the Supreme

Court stated, "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Because noncitizen detainees cannot be indefinitely detained, after the six-month has elapsed, the noncitizen may be released if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also* 8 C.F.R. § 241.13(d)(3). Assuming this showing can be made, the burden then shifts to the government to introduce evidence to refute that assertion. *Id.*; *see also* 8 C.F.R. § 241.13(e)–(g). The parties do not dispute that Petitioner has been detained for more than the presumptively reasonable six-month period. The relevant inquiry is whether there is a significant likelihood of removal in the reasonably foreseeable future.

Petitioner has shown good reason to believe that there is no significant likelihood of his removal to Jordan in the reasonably foreseeable future. According to Petitioner, he "has fully cooperated with efforts to obtain travel documents[.]" Dkt. 1 at 6. Petitioner declares he has contacted the Jordanian Embassy and Consulate multiple times, and "each time they told [him] that they cannot issue travel documents for [him] because [he] is not a citizen of Jordan." Dkt. 3 at 4. These facts provide good reason to believe that there is no significant likelihood of his removal in the reasonably future.

The burden thus shifts to Respondents to introduce evidence to refute this assertion. In arguing that his removal to Jordan is reasonably foreseeable, Respondents rely on a single declaration from Palacios. Dkt. 12 at 4 (citing Dkt. 12-1 at 4). Palacios states the following: On November 5, 2025, the Jordanian Embassy confirmed that Petitioner had previously been issued a temporary Jordanian passport on an unspecified date and could not be issued emergency travel documents. *Id.* at 4. The Jordanian Consulate advised the Enforcement and Removal Operations ("ERO") that Petitioner can renew his passport and provided instructions for doing so. *Id.* On November 17, 2025, the ERO mailed a completed application to renew Petitioner's Jordanian passport along with a return envelope. *Id.* On January 9, 2026, the Jordanian Consulate mailed out a reply to the application, which is set to arrive at Adelanto Processing Center "imminently." *Id.*

Palacios anticipates that the return envelope contains Petitioner's renewed Jordanian passport. *Id.* Petitioner challenges the credibility of Palacios' statements in his declaration attached to his Reply. *See* Dkt. 13 at 4–5. He states the following: On November 20, 2025, Officer Palacios asked him if the Jordan Embassy has ever issued him a passport, to which he replied that he never had a Jordanian passport. Dkt. 13 at 9. According to Petitioner, on November 23, 2025, Palacios asked if the Jordanian Embassy issued a temporary passport, to which he again replied, "I never had a passport or a temporary one. I was young. I don't know what I had honestly." *Id.*

This record shows that the Jordanian Embassy or Consulate is providing conflicting information regarding Petitioner's eligibility to apply and receive a temporary passport. Given the factual disputes and potential issues of credibility, the Court cannot determine whether Petitioner has sought a Jordanian passport, or whether it is to be imminently received. The Court concludes that Petitioner has at least shown that there are serious questions as to whether there is a significant likelihood that Respondents can remove him to Jordan in the reasonably foreseeable future. *See Flathead*, 98 F.4th at 1192.

3. Claim 3: Deprivation of Notice and Opportunity to be Heard Before Removal to Third Country

Petitioner's third claim asserts that Respondents' anticipated decision to remove him to an alternative country violates his Fifth Amendment procedural due process rights. Dkt. 1 at 13–15.

When a noncitizen is ordered removed from the United States, the immigration judge must identify a removal country or alternative countries to which the noncitizen can be removed. *See Hadera v. Gonzales*, 494 F.3d 1154, 1156 (9th Cir. 2007); *see also* 8 U.S.C. § 1231(b)(2)(A)–(B); 8 C.F.R. § 1240.12(d). If the government is unable to remove the noncitizen to a designated country, it may remove a noncitizen to an alternative country. *See* 8 U.S.C. § 1231(b)(2)(A)–(B); 8 C.F.R. § 1240.12(d). Before the government can do so, it must notify the noncitizen of the right to apply for asylum and

withholding of deportation and an opportunity to be heard. *See Andriasian v. Immigr. & Naturalization Serv.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also* 8 U.S.C. § 1231(b)(3)(A).

Here, an Immigration Judge ordered that Petitioner be removed to Jordan on January 11, 2006. Dkt. 12-1 at 2. Petitioner argues that ICE threatened to send him to a third country if Jordan continued to refuse to issue him travel documents. Petitioner asserts that he has never had the opportunity to contest removal to a third country on grounds that he may face persecution or torture in that country. Dkt. 1 at 14. Respondents did not respond to this issue in their Opposition. *See* Dkt. 12. The Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim. *See Singh v. Chiang*, 2025 WL 4058328 at *4.

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

**B. Irreparable Harm**

Petitioner argues he is likely to suffer irreparable harm in the absence of temporary relief because his illegal confinement without procedural due process "'unquestionably constitutes irreparable injury.'" Dkt. 2 at 3 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Respondents did not address this issue in their Opposition. *See* Dkt. 12.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Again, the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim. *See Singh*, 2025 WL 4058328 at *4. Petitioner here has nevertheless shown is likely to suffer irreparable harm because Respondents have deprived him of his procedural due process rights. They have not provided him with notice of the reasons for his revocation and failed to provide him with a prompt informal interview. There are serious questions about the lawfulness of Petitioner's continued detention given that there may not be a significant likelihood that

he can be removed to Jordan in the reasonably foreseeable future. And there is a likelihood that Respondents will remove him to a third country without giving him notice or an opportunity to raise any asylum or withholding claims. Considering Petitioner is likely being deprived of his Fifth Amendment procedural due process rights, "'no further showing of irreparable injury is necessary.'" *Pinchi v. Noem*, No. 5:25-cv-05632, 2025 WL 2084921, at *6 (N.D. Cal. July 24, 2025) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)).

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

**C. Balance of Equities and Public Interest**

Petitioner finally argues the risk of harm to Petitioner is far outweighed by Respondents' interest in illegally detaining him. Dkt. 2 at 4. Respondents did not address this issue in their Opposition. *See* Dkt. 12.

The Court again construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim. *See Singh*, 2025 WL 4058328 at *4. In addition, the Petitioner and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). Petitioner also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not follow the procedures for revoking his release and re-detaining him, and because there are at least serious questions about whether his continued detention is lawful given his removal to Jordan may not be reasonably foreseeable. Respondents, by contrast, will suffer minimal injury with a short delay in removing Petitioner from the United States to ensure that Petitioner is guaranteed notice and an opportunity to be heard.

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

**D. Bond**

A court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*."'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

**V. CONCLUSION**

For the above reasons, the Application is **GRANTED, IN PART**, as follows:

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody. Respondents are also **ORDERED** to place Petitioner on supervision subject to the same conditions that applied before his re-detention. Respondents must file a declaration by January 29, 2026, confirming Petitioner has been released from immigration custody;

2. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are temporarily **ENJOINED** from revoking Petitioner's release

without adequate notice of the reasons for the revocation and from re-detaining him without a prompt informal interview as required under 8 C.F.R. §§ 241.4(l) and 241.13(i);

3. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are temporarily **ENJOINED** from removing Petitioner to a country other than his designated country of Jordan without providing him notice and opportunity to be heard as required under 8 U.S.C. § 1231(b)(3)(A);

4. This order will remain in effect until February 5, 2026, at 5:00 p.m. This order may be extended for good cause or with Respondents' consent;

5. Respondents are **ORDERED TO SHOW CAUSE**, in writing, why a preliminary injunction should not issue. This response is due by February 5, 2026. Petitioner may file a response by February 12, 2026. The Court will set a hearing only if necessary.

6. Petitioner's request that Respondents be enjoined from transferring him out of the Central District of California is **DENIED** as moot in light of the Court's previous order. *See* Dkt. 8 ("Petitioner may not be **moved to a location outside the jurisdictional boundaries of the United States District Court for the Central District of California during the pendency of this action, unless otherwise ordered by the court**.").

7. Because the Court finds that Petitioner is entitled to full scope the requested temporary injunctive relief based on Claims 1, 2, and 3, the Court need not address whether he is entitled to the same injunctive relief as to Claim 4. *See Doe v. Noem*, 781 F. Supp. 3d 1055, 1067 n.2 (E.D. Cal. Apr. 17, 2025) (declining to address petitioner's remaining immigration-related claims because he was entitled to temporary injunctive relief under his APA claim); *L.G.M.L. v. Noem*, No. No. 25-2942, 2025 WL 2671690, at *16 (D.D.C.

Sep. 18, 2025) (declining to address petitioners' remaining immigration-related claims where petitioners were entitled to temporary injunctive relief on TVPRA claim); *Okyem v. Noem*, No. 25-CV-2120, 2025 WL 2551137, at *3 (C.D. Ill. Apr. 21, 2025) (declining to address petitioner's due process or Declaratory Judgment Act claims because petitioner was entitled to temporary injunctive relief on APA claims).

**IT IS SO ORDERED.**

Dated: January 22, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE